**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**
**Plaintiff,**

**CASE NO.: 8:16-cr-00127-CEH-TGW**

**v.**

**NATHAN MADSEN,**
**Defendant.**
**___________________________________/**

## SENTENCING MEMORANDUM

**COMES NOW**, NATHAN MADSEN, by and through the undersigned counsel, and files this sentencing memorandum in support of a sentence below the advisory guideline range. Mr. Madsen respectfully requests that this Honorable Court impose a sentence "sufficient, but not greater than necessary" to achieve the sentencing purposes of 18 U.S.C. § 3553(a). The factors below establish such a sentence is the ten year minimum mandatory required under Count 1.

## GENERAL SENTENCING CONSIDERATIONS

The Court's overarching statutory mandate is to impose the minimum sentence sufficient to serve the purposes of sentencing. *Kimbrough v. United States,* 128 S. Ct. 558, 570 2007). *Kimbrough* cites 3553(a), and *Rita* (parsimony provision is a requirement of 3553(a)), for that proposition. The phrase "parsimony clause" is a euphemism disguising the fact that there is a constitutional doctrine of the "least restrictive alternative" which creates a constitutional mandate to impose the least restrictive sentence that will satisfy the legitimate purposes of sentencing.

Section 3553(a) states, in part, "[t]he court, in determining the particular sentence to be imposed, shall consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Other factors include (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, (4) the need to protect the public, and (5) the guideline range. See 18 U.S.C. § 3553(a).

When a defendant objects to proposed enhancements, the Government has the burden of proving the facts justifying the increased punishment. The applicable burden is a preponderance of the evidence.

Although the preponderance standard is not as daunting as proof beyond a reasonable doubt, the Eleventh Circuit has made it clear that the Government is not entitled to a free pass when seeking an enhancement. The preponderance standard is not "toothless." Instead, the Government must present reliable and specific evidence to establish liability for an enhancement. The Eleventh Circuit described the sentencing burden in *United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009):

> It is by now abundantly clear that once a defendant objects to a fact contained in the PSI, the government bears the burden of proving that disputed fact by a preponderance of the evidence. *United States v. Rodriguez,* 398 F.3d 1291, 1296 (11th Cir. 2005); see also *United States v. Liss*, 265 F.3d 1220, 1230 (11th Cir.2001) ("When a defendant challenges one of the bases of his sentence as set forth in the PS[I], the government has the burden of establishing the disputed fact by a preponderance of the evidence.") (quotation marks omitted); *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir.1995) (explaining that when a defendant challenges a fact in the PSI, the government's burden of proof is triggered). We have explained that "the preponderance standard is not toothless. It is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence." *United States v. Bernardine, 73 F.3d 1078, 1080 (11th Cir.1996) (emphasis omitted).* As we said in *Lawrence*:
>
> > Once the Government has presented proper evidence, the district court must either: (1) make an explicit factual finding as to the allegation; or (2) determine that no such finding is necessary because the matter controverted will not be taken into account in sentencing the defendant.

47 F.3d at 1567 (citations omitted).

The Eleventh Circuit in *Martinez* quoted extensively from *United States v. Lawrence*, 47 F.3d 1559 (11th Cir. 1995). *Lawrence*, in turn, favorably cited the decision by the Eighth Circuit in *United States v. Wise*, 976 F.2d, 393 (8th Cir. 1992), cert. denied, 113 S.Ct. 1592 (1993), for its hearty endorsement of the District Court's preeminent role in adjudicating enhancement disputes:

> Although not as rigorous as the reasonable doubt or clear and convincing standards, the preponderance standard is not toothless. It is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence. As one of our sister circuits noted:
>
> > [T]he Guidelines do not reduce district court judges to mere automatons, passive compilers of ciphers, or credulous naifs who must accept as canon all that which is presented to them regarding a defendant's involvement in the crime charged or conduct relevant thereto.... [T]he preponderance of the evidence standard ... does not relieve the sentencing court of the duty of exercising the critical fact-finding function that has always been inherent in the sentencing process.... [The standard signifies] a recognition of the fact that if the probation officer and the prosecutor believe that the circumstances of the offense, the defendant's role in the offense, or other pertinent aggravating circumstances, merit a lengthier sentence, they must be prepared to establish that pertinent information by evidence adequate to satisfy the judicial skepticism aroused by the lengthier sentence that the proffered information would require the district court to impose.
>
> *United States v. Wise,* 976 F.2d 393, 402-03 (8th Cir.1992), *cert. denied,* ___ U.S. ___, 113 S.Ct. 1592, 123 L.Ed.2d 157 (1993).

Finally, as far as types of proof are concerned, hearsay is permitted at sentencing. *United States v. Zlatogur*, 271 F.3d 1025 (11th Cir. 2001). The use of hearsay is conditioned on three factors: (1) the evidence has sufficient indicia of reliability; (2) the court makes explicit findings of fact as to credibility; and (3) the defendant has an opportunity to rebut the evidence. *Id.*

## FACTORS SUPPORTING A VARIANCE

1. The Probation office has identified factors that support a downward variance. See paragraph 119, which endorses specific factors such as physical abuse, unstable upbringing, an environment permeated by sexual deviance and drug addiction and

alcoholism – all of which contributed to "defendant's diminished mental health capacity and altered his ideals as to what constituted normal sexual behavior." This troubling upbringing stands in contrast to Mr. Madsen marrying and having an 8-year-old son.

2. The defendant is amenable to sexual offender treatment as evidenced by his participation in the S.H.A.R.E. program. See attached Exhibit A documenting his participation in the program. The program coordinator, Robert Parham, will be a witness at the sentencing. Mr. Madsen's therapy has focused on appreciating the harms, avoiding inappropriate stimuli, creating boundaries with people in general, and assessment of historical events that may have contributed to the current situation.

3. The unsavory and disturbing nature of the charges cannot be denied. And yet, there are aspects of the situation that put it in perspective both in terms of the facts and the guideline application to them as set forth below:

    a. In a lengthy interview conducted on June 30, 2016, the victim, "ZJ," informed investigators from the Department of Homeland Security that she had created her own internet blogs and had 1600 followers. See Department of Homeland Security Report of Investigation ("ROI") regarding conducted on June 30, 2016, page 2.

    b. ZJ also made it clear to the investigators that she had no intention of ever having any kind of personal contact with the Defendant. "ZJ believed that the reason MADSEN shared so many details with her was because she did not intend to ever meet him. ZJ added that she did not take this as she should have because there was no intent to see him in person." See ROI, page 2. Later in the interview, "ZJ stated that MADSEN did attempt to arrange a rendezvous; however, ZJ was able to deflect his advances. ZJ stated that, she made it sound as if she may consent to the meeting; however, she had no interest in meeting him." See ROI, page 5.

    c. The superseding information and the charges contained in it, are the result of Mr. Madsen wanting to accept responsibility for circumstances that he was solely responsible for creating with ZJ, unlike the undercover sting operation outlined in the pseudo-count set forth in the PSIR. Ironically, the enticement of a minor to engage in sexual activity charge which involves no hands-on touching of a minor has an total offense level of 40 (292 to 365 months incarceration) compared to an total offense level of 32 (121 to 151 months incarceration)(both without consideration of acceptance of responsibility) for the pseudo-count, attempting to engage a minor and a commercial sex act.

    d. Here, Mr. Madsen never had physical contact with Z.J. The Internet nature of the relationship facilitated outlandish image exchanges because of the safety of distance. ZJ made it clear she never intended to have any physical contact with Mr. Madsen. A lot of what took place was sexually charged role-playing.

She freely engaged in conversations and image exchanges with him without threats.

e. *The guidelines often produce seemingly inconsistent results and thus call for serious introspection about how the final result should be "sufficient but not greater than necessary".* For example, under 2A3.2 Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such Acts, Mr. Madsen would have scored a base offense level of 18 incurred a specific offense characteristic increase for 4 levels for unduly influencing a minor under (b)(2) and a 2 level increase for use of the computer under (b)(3) for a total offense level of 24 minus three for acceptance leaving him at level 21, criminal history I scoring out to 37 – 46 months. This low score touching charge provides context and perspective on the severity of the ten year minimum mandatory under 18 USC 2252. Moreover, if Mr. Madsen was charged with the conduct "in the special maritime and territorial jurisdiction of the United States" (i.e. a military installation) under 18 USC 2244, even aggravated sexual abuse under Section 2241 would be capped at ten years regardless of guidelines calculations. *See* 18 USC 2244(a)(1). Surely the gravity of these disparities triggers the admonition of Section 3553 that in imposing sentence "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" must be considered.

4. The defense has provided seven character letters that explain the favorable attributes of Mr. Madsen. Some of the language is worth highlighting and is set forth below:

a. "Nathan has always been an intelligent and inquisitive person. Growing up, he always wanted to know the meaning of things, and engaged in academics with fervor. This was his outlet and means from escaping a very abusive home environment. He was always loving, warm, and would show his love to anyone that would accept him for who he was as a person….

"There was sexual abuse within the family that was never addressed when we were children growing up. It wasn't until my own adulthood that I was able to undergo therapy and see the damaging effects of the sexual abuse and the emotional/physical abuse done to all of the children in my family….

"Despite the environment that Nathan was raised in, his character was one of love, compassion, and [he] was known as a peacemaker …."

----- Letter from Stephen Madsen, Defendant's brother.

b. "The Nathan Madsen that I know is an intelligent, kind, and thoughtful person whose childhood had a profound and damaging effect on his life. When we were close in school, I was aware that Nathan's home life was less than ideal, but I had no idea the extent to which he was suffering from and struggling with an abusive home life….

"I know that justice needs to be served in this case. I know that the judge is tasked with the difficult task of weighing all of the circumstances of the crime and the defendant. Nathan has to pay for what he did, but I hope that all of the circumstances of his life will be taken into account. I worry that a harsh sentence will only serve to compound the conditions that led to his crime, and I hope that whatever sentence the judge determines is just will include provisions for the kind of support and counseling he needs in order to find and regain the light that I know is in him."

----- Letter from Tyler Hafen, a friend of the Defendant since middle school.

c. "I know, based on Nathan's core morality, that he knows the action that led to this criminal case was wrong and immoral. I also know based on Nathan's history of taking on and accomplishing many challenging goals in his life, that he can set and accomplish a goal to overcome the issues that led to these regrettable actions. I know that he has already begun this process and has grown a lot."

----- Letter from James Ash, Jr., another friend of the Defendant since middle school.

d. "… I know he [the Defendant] is very remorseful for his past actions, and is totally committed to never enter those dark realms again…."

----- Letter from Mary K. Lowe, Defendant's aunt.

e. "… I recognize that Nathan will and should be punished. I recognize that there is a fight before him, but I ask the court to give him a chance to put the deranged part of himself away and to rejoin society and contribute to the world as I know he is able."

----- Letter from Daniel B. Moore, a friend of the Defendant since childhood.

f. "I believe Nate is redeemable. He has expressed his desire to make significant changes in who and what he is. I believe I have seen some change in him already. I believe after Nate has served his prison sentence he will long have abandoned his proclivities. I think if he gets out of prison a middle-aged man he will be a good person with good to contribute to society. I was repulsed by the Nate who was arrested, but not by the Nate I have corresponded with over the last few months."

----- Letter from David Madsen, an uncle of the Defendant.

g. "…. After spending the last year with him [the Defendant] in pretty intense interaction I find I have quite a bit of affection for him and also feel a

sense of loss. I'm 73 in June but I hope to see him walk out of prison some day and look forward to it ---- not because he will be free from the prison walls but because I am confident he will use his time to become free from his addiction and channel his creativity positively…."

----- Letter from Michael Madsen, another uncle of the Defendant.

5. A critical observation concerning Mr. Madsen's circumstances involves how he was living his life outside of the Internet liaisons described in the PSIR. As a University of Tampa Professor of music, from August 2014 until March 2016 (See PSIR paragraph 97), Mr. Madsen had regular contact with young college students including females. Despite the publicized nature of his arrest and his termination as a professor, latent investigation failed to reveal any students who had uncomfortable or creepy overtures from Mr. Madsen. His failure to display any sexual deviancy in this environment demonstrates the compartmentalized nature of any pattern of sexual activity; establishes that treatment based intervention can be highly effective; and, demonstrates that the 10 year minimum mandatory is sufficient but not greater than necessary to meet the multifaceted purposes of sentencing which are punishment, deterrence, protection, reformation/rehabilitation, and reparation. Perhaps most significantly, in the summer of 2015, Mr. Madsen served as a director of summer music camp for 12 – 17 year old students without incident. Mr. Madsen had appropriate boundaries in these real world face-to-face encounters with youth.

6. Mr. Madsen completed the house arrest conditions of pretrial release without incident. During his pretrial release, he met the conditions of confinement. He was able to secure a job briefly at a box making company showing he could humble himself to perform warehouse work regardless of his extensive education. See paragraph 96 of PSIR. ("Records also reflect that the defendant was an excellent employee and that he was capable of working with little to no supervision.")

7. There is also the need for mental health treatment. The Court needs to find a balance between the length of the sentence and this obvious need for treatment to impose a sentence that is not greater than necessary to achieve the statutory purposes of sentencing. At age 37, with absolutely no prior record, Mr. Madsen should have the opportunity to undergo treatment and have the chance to be released in his later years (under supervision with continued treatment).

8. Mr. Madsen has gone beyond acceptance of responsibility. This point will be presented further to the Court at the hearing.

9. *Pepper v. United States*, 131 S.Ct. 1229 (2011), extols consideration of post-sentencing rehabilitation when a defendant appears before the District Court for re-sentencing. The Supreme Court emphasized that post-sentencing rehabilitation was fundamental to the District Court's overarching duty under § 3553(a) to "'impose a sentence sufficient, but not greater than necessary' to serve the purposes of sentencing." The Supreme Court declared among other things that the history and

characteristics of the defendant *on the day of sentencing* (or re-sentencing in Pepper's case) are crucial. As Mr. Madsen stands before this Court on May 25, 2017, his history shows good employment, model performance of pretrial release, model performance of the S.H.A.R.E. program which he voluntarily entered, a good support community of friends and family that can help him re-enter society after incarceration and assure his compliance with the terms and conditions of supervised release.

10. Additional argument will be presented at the sentencing hearing *ore tenus*.

**WHEREFORE**, because a sentence less than the guidelines honors the factors of §3553(a) and is "sufficient, but not greater, than necessary", Mr. Madsen respectfully requests this Honorable Court to grant a variance that would acknowledge the mitigating circumstances, amenability to supervision, conduct during pretrial release including sex offender rehabilitation, complete compliance with all conditions of house arrest as well as his job history and potential to be a productive member of society.

Respectfully Submitted,

s/ Michael P. Maddux
Michael P. Maddux, P.A.
Florida Bar No.: 964212
2102 West Cleveland Street
Attorney for Defendant
Tampa, Florida 33606
Phone: (813) 253-3363
Fax: (813) 253-2553
E-mail: mmaddux@madduxattorneys.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this May 18, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

s/ Michael P. Maddux
Michael P. Maddux, Esquire